Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000549
30-AUG-2013
08:35 AM

CAAP-11-0000549

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ALDEN ASAO IHA, Defendant-Appellant,
and
JASE A. VENIEGAS, Defendant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR NO. 09-1-1762)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Foley and Fujise, JJ.)


Defendant-Appellant Alden Asao Iha (Iha) appeals from
the Amended Judgment of Conviction and Probation Sentence
(Amended Judgment) entered on July 20, 2011, by the Circuit Court
of the First Circuit (Circuit Court).[1] Plaintiff-Appellee State
of Hawai'i (State) charged Iha by felony information with second-
degree theft, in violation of Hawaii Revised Statutes (HRS)
§ 708-831(1)(b) (Supp. 2012).[2] The State alleged that Iha did

---

[1] The Honorable Dexter D. Del Rosario presided.

[2] HRS § 708-831(1)(b) provides:

>     (1) A person commits the offense of theft in the second
> degree if the person commits theft:
>
>     . . .
>
>     (b)  Of property or services the value of which exceeds
>          $300[.]

"intentionally receive, retain or dispose of" property of the complaining witness (CW), which exceeded $300 in value, knowing that the property had been stolen, with intent to deprive the CW of the property.

Iha's charge stemmed from the CW's observation of two men stealing a surfboard and a standup paddle board from the CW's residence at about 11:30 p.m. While the theft was in process, the CW told his wife to call 911. Iha was stopped by the police a short time later, after he was seen driving a Ford Bronco with the CW's two boards sticking out the back. Jase A. Veniegas (Veniegas) and Tiare Kuehnl (Kuehnl) were passengers in Iha's vehicle.

After a jury trial, Iha was found guilty as charged.[3] The Circuit Court sentenced Iha to five years of probation, subject to the special condition that he serve one year of imprisonment.

On appeal, Iha contends: (1) there was insufficient evidence to support his conviction; (2) the Circuit Court erred in admitting the testimony of a police appraiser regarding the value of the CW's property; (3) the Circuit Court erred in preventing Iha from questioning the lead detective about Kuehnl's statements to the detective and whether the detective recommended charging her; (4) the Circuit Court erred in setting aside its prior order directing the State to return Iha's Ford Bronco; and (5) the Circuit Court erred in denying Iha's request for the return of his posted bail.

As explained below, we affirm Iha's conviction and sentence, but we remand the case for further proceedings with respect to the disputes over Iha's Ford Bronco and his posted bail.

---

[3] Prior to Iha's trial, Veniegas, who had been charged in separate counts of the same felony information as Iha, pleaded guilty to the reduced charge of second-degree burglary and guilty as charged to second-degree theft.

I.

We resolve the issues raised by Iha on appeal as follows:

A.

Iha argues that there was insufficient evidence to show that he intended to receive, retain, or dispose of the CW's surfboard and standup paddle board, knowing that they had been stolen, and that he had exercised any control over them. We disagree.

The CW testified that at about 11:30 p.m., he looked out his bedroom window and saw two male figures carrying his standup paddle board. The CW ran to check on his boards and discovered that two of his boards were missing. The CW went to the front of his residence and he saw a Ford Bronco parked on the street with his two boards sticking out the back. The CW ran to the Bronco and slapped the back of the Bronco with his hand as it pulled away. The Bronco did not stop but drove away with its lights off. A short time later a police officer stopped the Bronco. Iha was driving.

At trial, Iha testified that he dropped off Veniegas and Kuehnl on the CW's street and later came back to pick them up. When Iha came back, he saw them standing on the side of the street with two surfboards, which they loaded into his Bronco. Iha testified that at this point, he did not know that the boards were stolen, but that he came to realize the boards were stolen when a man approached the Bronco and hit the car as Iha drove away. In his post-arrest statement to the police, however, Iha admitted that he knew Veniegas and Kuehnl were going to "rip" something, but that he agreed to drive them because it was his understanding that they would give him money. Iha testified that once he realized the boards were stolen, he pulled over and told Veniegas and Kuehnl to get out and take the boards, but they refused. Iha testified that his plan was then to simply drive Kuehnl to her home. He admitted, however, that when the police pulled over the Bronco, with Iha, Kuehnl, and Veniegas inside, he

3

was in Kahala, which is in the opposite direction from Kuehnl's house, his purported destination. According to Iha's testimony, he and Veniegas were the only males in the Bronco when he was pulled over.

We conclude that when viewed in the light most favorable to the State, there was sufficient evidence to support Iha's conviction.

B.

The Circuit Court did not err in admitting the testimony of a police appraiser regarding the value of the CW's stolen boards. To prove second-degree theft, the State was required to establish that the property stolen exceeded $300 in value. The CW testified that the boards stolen were (1) a 10-foot "BT" brand longboard he had bought several years earlier for about $700; and (2) a 11'6" "Naish" standup paddle board, which he received as a gift a year before, but had cost about $1,500 brand new.

The Circuit Court also admitted the testimony of Honolulu Police Department (HPD) Sergeant Dwayne Takayama (Sergeant Takayama) that the fair market value of the standup paddle board and 10-foot surfboard were $1,000 and $200, respectively. Sergeant Takayama had been trained and certified to appraise property, had appraised items in 200 to 300 cases, and had testified as an expert appraiser 20 to 25 times. Sergeant Takayama based his appraisal on a verbal description of the boards, and research he had done on eBay, craigslist, and local "Buy & Sells." He confirmed his opinion as to the boards' appraised value after viewing photographs of the boards at trial. We conclude that the Circuit Court did not err in admitting the testimony of Sergeant Takayama regarding the value of the CW's boards.

C.

Iha argues that he was denied a fair trial because the Circuit Court prevented him from challenging the credibility of the statement Kuehnl made to HPD Detective Laurie Takamoto

4

(Detective Takamoto) or inquiring about any "favorable consideration" given to Kuehnl by the government. Specifically, Iha was prevented from questioning Detective Takamoto about Kuehnl's out-of-court statement to Detective Takamoto and whether Detective Takamoto recommended that Kuehnl be charged with any offense.

Kuehnl did not testify at trial and the State did not attempt to introduce any of Kuehnl's out-of-court statements. Iha has not shown the relevance of the questions he was prevented from asking, and we conclude that the Circuit Court did not err in sustaining the State's objections to those questions.

D.

After Iha's arrest, the HPD on November 9, 2009, seized his Ford Bronco for administrative forfeiture. The first attempt at administrative forfeiture was terminated, apparently because HPD failed to send a written request for forfeiture to the Office of the Prosecuting Attorney, City and County of Honolulu (Prosecutor's Office), within 30 days of the seizure as required by HRS § 712A-7(4) (1993). On February 1, 2010, the second attempt at administrative forfeiture was initiated. However, on April 21, 2010, the Department of the Attorney General, State of Hawai'i (Attorney General), dismissed the Prosecutor's Office's petition for administrative forfeiture, without prejudice, because the vehicle identification number in the caption was incorrect. On April 28, 2010, the third attempt at administrative forfeiture was initiated. The Prosecutor's Office filed a petition for administrative forfeiture with the Attorney General, and on May 6, 2010, Iha filed his opposition to the petition. The record in this case, however, does not contain any further information on the outcome of the third attempt at administrative forfeiture.

Meanwhile, on December 10, 2009, Iha filed a motion in this case for the return of his Bronco. The prosecutor did not object to Iha's motion. On January 12, 2010, the Circuit Court entered an order granting Iha's motion and ordering that the

5

Bronco be returned to Iha forthwith (Order to Return Bronco).  On March 8, 2010, Iha filed a motion to compel the State to return the Bronco (Motion to Compel Return of Bronco) when the HPD, apparently citing forfeiture proceedings, refused to comply with the Circuit Court's Order to Return Bronco.  On March 23, 2010, the State filed a motion to set aside the Order to Return Bronco (Motion to Set Aside Order to Return Bronco), arguing that due to administrative forfeiture proceedings, the Circuit Court was divested of jurisdiction to order the return of the Bronco.  On June 15, 2010, the Circuit Court entered an order granting the State's Motion to Set Aside Order to Return Bronco.  The Circuit Court ruled that it was granting the State's motion because the Circuit Court "lacked subject matter jurisdiction" to issue the Order to Return Bronco, when it issued the order.[4]

On appeal, Iha argues that the Circuit Court erred in granting the State's Motion to Set Aside Order to Return Bronco. Iha contends that the Circuit Court's prior Order to Return Bronco was "res judicata" and therefore the Circuit Court could not set it aside.  However, final judgment had not been entered in the case when the Circuit Court granted the State's Motion to Set Aside Order to Return Bronco.  Accordingly, we conclude that the doctrine of res judicata did not preclude the Circuit Court from reconsidering its prior Order to Return Bronco.  See Cho v. State, 115 Hawai'i 373, 383-84, 168 P.3d 17, 27-28 (2007) (holding that a trial court has the inherent power to reconsider, modify, or rescind interlocutory orders prior to the entry of final judgment).

We further conclude, however, that the Circuit Court's reason for setting aside the Order to Return Bronco -- that it lacked subject matter jurisdiction to enter the order -- was erroneous under the facts of this case.  The State acknowledges that the first attempt at administrative forfeiture was

---

[4] The Circuit Court mistakenly referred to the date of the Order to Return Bronco as January 21, 2010, rather than the correct date of January 12, 2010.

6

terminated due to "time constraints," apparently because the HPD failed to send a written request for forfeiture to the Prosecutor's Office within 30 days of the seizure as required by HRS § 712A-7(4). It therefore appears that there was no validly pending administrative forfeiture proceeding at the time the Circuit Court issued its Order to Return Bronco which could possibly have served to divest the Circuit Court of jurisdiction to issue the Order to Return Bronco.[5/] Accordingly, the Circuit Court's reason for granting the State's Motion to Set Aside Order to Return Bronco was erroneous.

As noted, the record does not reflect the outcome of the third attempt at administrative forfeiture, and those proceedings may be relevant to the dispute over the Bronco raised in this case. Under these circumstances, we vacate the Circuit Court's order granting the State's Motion to Set Aside Order to Return Bronco and remand the case for further proceedings. On remand, the Circuit Court may consider the results of the administrative forfeiture proceedings along with any other relevant evidence in addressing the parties' claims regarding the Bronco.

E.

After Iha was indicted, the Circuit Court set bail at $11,000. Michael Iha (Michael) posted the $11,000 bail in cash. When Iha failed to appear for sentencing, the Circuit Court issued a bench warrant on May 4, 2011, and forfeited Iha's bail. On May 26, 2011, Iha filed a motion to set aside the bench warrant, to reinstate his bail, and to reschedule sentencing. However, he was arrested on the bench warrant that same day. At the rescheduled sentencing, the Circuit Court did not rule on Iha's motion, but found that it was "moot."

Iha argues that the Circuit Court erred in denying his request for the return of the $11,000 cash bail posted by

---

[5/] Given the facts of this case, we do not address the issue of whether the Circuit Court would have jurisdiction to order the return of property that was the subject of a validly pending administrative forfeiture proceeding.

7

Michael. HRS § 804-51 (Supp. 2012)[6/] provides that when a court "forfeits any bond or recognizance given in a criminal cause," the court shall immediately enter judgment in favor of the State and cause execution to issue thereon after thirty days from the date notice of the judgment is given to the surety on the bond, unless within that thirty-day period, the principal or surety files a motion showing good cause why execution should not issue upon the judgment.

The State acknowledges that "[t]here does not appear to be a written order forfeiting bail or any evidence as to whether Michael was given notice[.]" Without a record of notice, it is unclear when the thirty-day clock began. Additionally, the State acknowledges that "there is no written order denying a motion to set aside bail forfeiture."

The record does not show that the Circuit Court ordered the forfeiture of Iha's bail in compliance with HRS § 804-51 or that the Circuit Court considered whether there was good cause

---

[6/] HRS § 804-51 provides in relevant part:

> Whenever the court, in any criminal cause, forfeits any bond or recognizance given in a criminal cause, the court shall immediately enter up judgment in favor of the State and against the principal or principals and surety or sureties on the bond, jointly and severally, for the full amount of the penalty thereof, and shall cause execution to issue thereon immediately after the expiration of thirty days from the date that notice is given via personal service or certified mail, return receipt requested, to the surety or sureties on the bond, of the entry of the judgment in favor of the State, unless before the expiration of thirty days from the date that notice is given to the surety or sureties on the bond of the entry of the judgment in favor of the State, a motion or application of the principal or principals, surety or sureties, or any of them, showing good cause why execution should not issue upon the judgment, is filed with the court. If the motion or application, after a hearing held thereon, is sustained, the court shall vacate the judgment of forfeiture and, if the principal surrenders or is surrendered pursuant to section 804-14 or section 804-41, return the bond or recognizance to the principal or surety, whoever shall have given it, less the amount of any cost, as established at the hearing, incurred by the State as a result of the nonappearance of the principal or other event on the basis of which the court forfeited the bond or recognizance. If the motion or application, after a hearing held thereon, is overruled, execution shall forthwith issue and shall not be stayed unless the order overruling the motion or application is appealed from as in the case of a final judgment.

for setting aside the bail forfeiture. Accordingly, we remand the case to the Circuit Court for determination of whether Iha demonstrated good cause to set aside the forfeiture of his bail.

II.

We affirm the Circuit Court's Amended Judgment with respect to Iha's conviction and sentence. We vacate the order granting the State's Motion to Set Aside Order to Return Bronco, and we remand the case for further proceedings consistent with this Summary Disposition Order with respect to Iha's Ford Bronco and the forfeiture of his bail.

DATED: Honolulu, Hawaiʻi, August 30, 2013.

On the briefs:

Andre' S. Wooten
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge